### BILL GILL v. THE STATE.

#### No. 3178. Decided March 8, 1905.

**Aggravated Assault—Charge Refused—Insulting Language.**

When the State's testimony showed that defendant, an adult male, first used insulting language towards a female by proposing to have sexual intercourse with her and then assaulted her to carry out his purpose, and the court charged the law applicable to the facts, and besides limited the insulting language to the purpose of determining whether the assault and battery were in fact made, the charge was favorable to defendant, and a requested charge that no amount of sense of shame or other disagreeable emotions of the mind, caused by words alone, would authorize a conviction was correctly refused, there being nothing in the record to show that the sense of shame or whatever disagreeable emotion as caused, was brought about by words alone.

Appeal from the County Court of Johnson. Tried below before Hon. J. D. Goldsmith.

Appeal from a conviction of aggravated assault; penalty, a fine of $350.

The opinion states the case.

No brief for appellant.

*Howard Martin,* Assistant Attorney-General, for the State.—Slavson v. State, 39 Texas Crim. Rep., 176; Robertson v. State, 30 Texas Crim. App., 498; Henkle v. State, 27 Texas Crim. App., 510.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of an aggravated assault, and his punishment assessed at a fine of $350.

The assaulted party Mrs. Kidd testified that she was on a visit to her son, who lived upon appellant's farm, desiring to return to her home in Cleburne; her son requested appellant to carry his mother home. He assented, and en route to Cleburne he insulted Mrs. Kidd with the request to have carnal intercourse with him. This she most emphatically declined: "He said his wife was sick, and had been for some time, and he had to have it. I told him I was sick and an old woman, and would not do it. He said there was no harm in it. He then got hold of my clothes and tried to pull them up, and I pushed them down. We had the lap robe over our laps, but he pushed the lap robe down and pulled my legs to get them apart, and said, 'I must have it.' I did not try to get out of the buggy. I was very much frightened. After we had gotten over the hill we came to Mr. Anderson's, and I told Mr. Gill I wanted to get out; told him I had dropped my cape. I told him this because I wanted an excuse to get out. He stopped the buggy and I got out, reached in the back of the buggy and got my grip and went in the house. I was frightened nearly to death. I told Mr. Anderson what had happened, and I was so badly frightened I could not eat any dinner." This is the testimony of Mrs. Kidd, the assaulted party. She declined to accompany appellant any farther in the direction of her home, but remained at Anderson's for awhile, went on to the town of Alavardo, from which point she returned to Cleburne on the train. Appellant denied the whole transaction, and said it did not occur. The witness Ballinger testified to some statements made by Mrs. Kidd to the effect that the reason she refused to go farther with Gill in the direction of home was owing to the fact that he was drinking. This was denied by Mrs. Kidd. Appellant proved good reputation for truth and veracity. This is the case on the facts. The court charged the jury if they believed from the evidence that defendant used violence upon the person of Mrs. Kidd, whatever be the means or the degree of violence, with intent to injure her, by producing bodily pain, or a sense of shame, or other disagreeable emotions of the mind, and that he used such means as was calculated to produce bodily pain or the sense of shame or other disagreeable emotions of the mind, and that he was an adult person and Mrs. Kidd was a female, he would be guilty. He further instructed the jury not to consider the insulting words and language attributed to the defendant by the witness Kidd, if they should find such words and language were used by defendant towards her for any purpose except that of determining whether or not an assault and battery was in fact made by defendant upon Mrs. Kidd. Exception was reserved in the motion for new trial to these charges, and a special charge asked to the effect that no amount of sense of shame or other disagreeable emotions of the mind, caused by words alone, would authorize a conviction of an aggravated assault; but the injury necessary to authorize such conviction must be the result of the acts of the defendant, and if the jury should find that the prosecuting witness was injured as alleged, but

that such injury was the result of the language, if any, used by defendant to the prosecuting witness, and not the result of his act and conduct towards her, or if there was a reasonable doubt upon this question they would acquit. We believe the charge given by the court was correct. There is no evidence authorizing the charge asked by defendant. Mrs. Kidd made out a clear case of an aggravated assault upon her, by defendant taking hold of her person, undertaking to pull up her clothes, and pushing apart her legs, coupled with the expressed desire for sexual intercourse. There is nothing in the record to show that his conduct against her was simply the use of insulting language, or that the sense of shame or whatever disagreeable emotion was caused, was brought about by words alone. That portion of the charge limiting the effect of the insulting words and language to the purpose of only determining whether or not the assault and battery was in fact made, was, in our opinion, favorable to defendant. It was unnecessary to limit. It could not have been used by the jury for other purposes than simply to tend to show that the assault and battery was in fact committed. It was an aggravation of the assault and battery, and the court by its charge seemed to have eliminated that phase from the jury, and limited them to the fact that they could only use it to determine whether or not an assault had been in fact committed. We believe the charge as given was sufficient; and there was no error in refusing the special instructions. There was a square issue of fact. There were two witnesses to the transaction. One testified most positively to facts that constitute an aggravated assault, and the other denies the transaction in toto. The jury believed the prosecuting witness, and convicted appellant. The testimony authorizes their conclusion. The judgment is affirmed.

*Affirmed.*

Henderson, Judge, absent.